PETERSON v ZURICH INSURANCE COMPANY

1. INSURANCE—CONTRACTS—COURTS—CONSTRUCTION OF CONTRACTS.

A court will not make a new contract of insurance under the guise of constructing the contract.

2. INSURANCE—FIRE INSURANCE—POLICY COVERAGE—EXCLUDED USE—OCCUPANCY—INCREASED HAZARD—KNOWLEDGE—CONSENT—FORFEITURE.

Knowledge or control by an insured is immaterial when assessing the coverage of a fire insurance policy where a particular use or occupancy is specifically excluded even though the policy also contains a clause which restricts the insurance when an increased hazard is within the knowledge or control of the insured; it is immaterial that an unauthorized use is carried on by a tenant without the knowledge or consent of the insured where the policy prescribes a forfeiture for any unauthorized more hazardous use or covers the premises only while occupied in a stated manner.

3. INSURANCE—CONSTRUCTION OF POLICIES—CONFLICTING CLAUSES—POLICY CLAUSES—RIDERS.

All parts of an insurance policy are to be harmonized and given effect if it can be done consistently; the riders must control if they are inconsistent and irreconcilable with a policy clause.

4. INSURANCE—FIRE INSURANCE—LIABILITY—OCCUPANCY CLAUSE—CONSENT.

An insurance company was not liable for losses from fire under an insurance policy which contained an occupancy clause providing that it was a condition of the insurance that the premises shall not be occupied without obtaining the consent of the company endorsed on the policy, where the premises were occupied before and at the time the fire occurred and no consent was given or endorsed on the policy by the insurance company.

REFERENCES FOR POINTS IN HEADNOTES

[1, 3] 17 Am Jur 2d, Contracts § 267.
   43 Am Jur 2d, Insurance § 259.
[2, 4, 5] 43 Am Jur 2d, Insurance §§ 935–942.

5. Insurance—Fire Insurance—Liability—Increased Hazard—
    Knowledge of Insured—Waiver—Statutes.

   An insurance company shall not be liable under the Michigan
   standard fire insurance policy for loss by fire occurring while
   the hazard is increased by any means within the control or
   knowledge of the insured, unless otherwise provided in writing
   and added to the insurance policy (MCLA 500.2832).

Appeal from Kalamazoo, Lucien F. Sweet, J. Submitted Division 3 November 14, 1974, at Grand Rapids. (Docket No. 17909.) Decided January 7, 1975.

Complaint by S.W. Peterson against Zurich Insurance Company and Bowen Agency, Inc., for recovery of losses under a fire insurance policy. GMF Corporation was added as a plaintiff. Judgment for plaintiffs. Zurich Insurance Company appeals. Reversed.

*Troff, Lilly, Piatt, File & Doyle,* for plaintiffs.

*Smith, Haughey, Rice, Roegge & Gould* (by *Laurence D. Smith* and *Lance R. Mather*), for Zurich Insurance Company.

Before: T. M. Burns, P. J., and R. B. Burns and Carland,* JJ.

Carland, J. This is an appeal as of right from a judgment entered on a directed verdict against defendant-appellant Zurich Insurance Company, hereinafter called Zurich, and in favor of plaintiffs-appellees GMF Corporation, hereinafter called GMF, and S.W. Peterson, doing business as Peterson's Building Sales, hereinafter called Peterson.

In 1968, GMF purchased premises in Kalamazoo

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

upon which was located the Silver Moon Tavern being operated by lessee Charles Neale. Shortly after this purchase, GMF entered into a contract with Peterson whereby the old tavern was to be torn down and replaced by a new structure. On September 27, 1968, GMF entered into a ten year lease with Neale covering the new tavern to be constructed. This lease provided in part as follows:

"This lease is for the period of ten (10) years *beginning at such date as building is ready for occupancy and terminating ten (10) years later."* (Emphasis added.)

Neale continued to operate in the old building until just prior to its actual demolition, at which time he requested a transfer of his license to the new location. Such request was granted subject to final inspection. Thereupon, Neale moved certain of his old equipment and his unused stock-in-trade to the new building and began to prepare to reopen. Although there remained certain work to be completed by Peterson, Neale's activities for reopening do not appear to have interfered with the work still to be done. Neale had a new bar installed, new carpeting was put down, supplies and equipment for the operation of a tavern were moved in, the cooling systems were placed in operation, chairs and tables were rented, and in fact, he was prepared to fully operate except for being able to serve food by April 15, 1969. At this point, a request was made of the Michigan Liquor Control Commission to complete the transfer of his license to the new location. On April 9, 1969, an inspection was made by an agent of the commission and the transfer was approved effective April 15, 1969. It appears to be undisputed that on or about the last date mentioned Neale began to operate the new tavern and continued to do so

until the operation was interrupted by a fire which occurred on April 28, 1969. The loss resulting from the fire was in the agreed amount of $19,627.68.

On or about March 3, 1969, as Peterson began to perform under his contract with GMF, he purchased from Zurich a so-called "builder's risk policy" in the amount of $33,000 which is the subject of this litigation.

Prior to the issuance of the Peterson policy, GMF purchased in April of 1968 two fire insurance policies, each in the amount of $7,500. One of these policies was issued by Zurich and the other by Hastings Mutual Insurance Company. By separate action, these policies were reformed increasing the coverage of each to $11,000 and the judgment entered therein also provided that in the event that the "builder's risk policy" of Zurich was held not to cover the loss occurring as a result of the fire of April 28, 1969, then GMF could recover the amount of its loss in equal amounts from Zurich and Hastings. These facts are mentioned only to point out that the real dispute in the case is between two contesting insurance companies and that plaintiffs will be fully paid from one source or the other.

A rider or endorsement attached to the policy here in question contained the following condition:

"4. Occupancy Clause: It is a condition of this insurance that the premises *shall not be occupied* without obtaining the consent of this Company endorsed hereon; except that machinery may be set up and operated solely for the purpose of testing the same without prejudice to the policy." (Emphasis added.)

Proof of loss was filed by Peterson and Zurich denied liability on the grounds that at the time of the fire the building was occupied without the

consent of the insurer and therefore no coverage existed. It is conceded that no consent was ever given or endorsed on the policy.

A suit was started by Peterson and GMF was later added as a party-plaintiff. Zurich raised the affirmative defense of occupancy and therefore of no coverage by reason of the above quoted provision. At the trial, by stipulation of the parties, Zurich was first permitted to put in its proofs as to its affirmative defense. Had this issue been decided in favor of Zurich, the trial would have then terminated.

At the conclusion of its proof as to occupancy, Zurich moved for a directed verdict of no cause of action. Appellees, while not conceding the fact of occupancy, opposed the motion on the grounds that Zurich had failed to prove that the occupancy, if any, was with the knowledge or the consent of either GMF or Peterson. In so opposing, the appellees asserted that by the terms of the lease, Neale was not a tenant at the time of the fire and also relied upon a provision of our Michigan statutory fire insurance policy which will be discussed later.

Zurich in turn argued that only the fact of occupancy was material and that it had sustained its burden of proof as to the affirmative defense advanced by it. Zurich further maintained that if lack of knowledge could be held to overcome this affirmative defense, then the burden of proof shifted to the plaintiffs to prove the affirmative fact asserted by them.

The trial court denied Zurich's motion for directed verdict and then proceeded to treat the remarks of appellees' counsel as a motion for a directed verdict. The court then held as a matter of law that the building was occupied by Neale before and at the time of the fire but held that

Zurich had the burden of proving that such occupancy was known to the insureds and that Zurich had failed to meet this burden. The court then denied the motion of Zurich to reopen its proofs for the purpose of showing such knowledge and granted a directed verdict in favor of plaintiffs.

The issue thus framed requires an answer to the question of whether Zurich's affirmative defense of occupancy required it to prove not only occupancy but also that GMF and Peterson had knowledge of the same.

In disposing of this issue, we agree with the trial court's finding that the building was occupied by Neale prior to and at the time of the fire. We further conclude that it was so occupied as the tenant of GMF. By the terms of the lease, the leasehold term was to commence "at such date as the building is ready for occupancy". Ready for occupancy and by whom and for what purpose? The answer must be that the term commenced when the building was ready for occupancy by Neale as a tavern operator. Neale did so occupy the building with the intent to continue to do so during the term of the lease. The fact that he paid no rent until June is of little moment since his obligation to do so arose on the date that occupancy began.

It is elemental that courts will not make a new contract of insurance for the parties under the guise of construing the contract, *Edgar's Warehouse, Inc v United States Fidelity & Guaranty Co,* 375 Mich 598; 134 NW2d 746 (1965), *Cottrill v Michigan Hospital Service,* 359 Mich 472; 102 NW2d 179 (1960). Having this rule in mind, a reading of the provision of the policy here in question leaves no room for interpretation. In clear, concise and unambiguous terms it states

that the premises "shall not be occupied without obtaining the consent of [the] company endorsed hereon". Clearly and unequivocally only an unoccupied building was covered by the policy. The plaintiffs would have us rewrite the policy to read "shall not be occupied except with the knowledge and consent of the insured". To do so would be to read into the policy a provision not contained therein. This we cannot do. An insurance company may limit the risk it assumes and fix the premiums accordingly. *Cottrill, supra.*

The plaintiffs point out that the Michigan standard fire insurance policy[1] provides in part as follows:

"Conditions suspending or restricting insurance. Unless otherwise provided in writing added hereto this Company shall not be liable for loss occurring

"(a) while the hazard is increased by any means within the control or knowledge of the insured."

Plaintiffs then argue that the Legislature has clearly indicated its intent that knowledge and/or consent of the insured are necessary ingredients before liability under any fire insurance policy may be avoided where an increase of hazard has occurred. This argument arises, we believe, from a misconception of appellant's position in this case. Appellant did not allege nor did it attempt to prove an increase of hazard. Zurich simply states that it insured only an unoccupied building. That is the only risk which it assumed and that is the only risk upon which its premiums were fixed. The position of GMF and Peterson is directly opposed to the analysis of the law in 45 CJS, Insurance, § 551, Change in Use or Occupancy, p 294.

[1] MCLA 500.2832; MSA 24.12832.

"Where a particular use or occupancy is specifically and in terms excluded or excluded by clear limitation of description, knowledge or control by insured is immaterial, even though the policy also contains an 'increase of hazard' clause which is dependent on control or knowledge of insured. Thus it is immaterial that an unauthorized use is carried on by a tenant without knowledge or consent of insured, where the policy prescribes a forfeiture for any unauthorized more hazardous use, or covers the premises only while occupied in a stated manner."

Thus it would appear that if the policy provision of the standard policy relied upon by plaintiffs is to control, then it must likewise be held that it so modifies or vitiates the rider or endorsement as to make the latter a useless scrap of paper. The two provisions cannot be harmonized in such a way as to give effect to both. One or the other must fail. In *Jackson v British America Assurance Co,* 106 Mich 47; 63 NW 899 (1895), the Court discussed the question of conflict between a clause of a policy incorporated by rider and a clause of the policy itself and spoke as follows on pages 50–51:

"We will first consider the effect of the riders, in and of themselves. It is elementary that all parts of the policy are to be harmonized and given effect, if it can be consistently done, and that, unless the riders are irreconcilable with the printed clause quoted, such clause must stand. If they are inconsistent and irreconcilable, the riders must control."

We therefore hold that since Zurich insured only an unoccupied building, that upon undisputed proof of occupancy at the time of the fire they were entitled to a directed verdict of no cause of action, and that they had no burden to prove knowledge or consent on the part of the insured.

Having reached this conclusion, we do not reach

the other issues raised. Reversed. Appellant may recover costs.

All concurred.