DETROIT AUTOMOBILE INTER-INSURANCE EXCHANGE v
LEONARD UNDERWRITERS, INC

Docket No. 52405. Submitted February 16, 1982, at Detroit.—Decided
June 22, 1982.

The Detroit Automobile Inter-Insurance Exchange filed suit in
Wayne Circuit Court against Leonard Underwriters, Inc., Rob-
ert A. Leonard, Jr., individually, and John Doe(s), alleging that
certain policies of automobile insurance were improperly writ-
ten and perhaps fraudulently issued by the defendants. The
defendants thereupon filed a third-party complaint against the
Mutual Fire, Marine and Inland Insurance Company seeking
indemnity or contribution for any amounts for which they
might ultimately be found liable to DAIIE. The third-party
complaint was based on certain insurance policies issued by
Mutual which protected the defendants for "agents' and bro-
kers' errors and omissions". The court, Peter B. Spivak, J.,
denied Mutual's motion for summary judgment, rejecting Mu-
tual's argument that the "claims made" policies were clear and
unambiguous in limiting liability to claims actually asserted
before the expiration date of the policy term. All of the acts
which led to the commencement of the initial suit occurred in
1975, during the policy term of the policies issued by Mutual.
However, the suit by DAIIE was not filed until after the policy
term had expired. Mutual appeals by leave granted. *Held:*

The contract language of the policies in dispute is unambigu-
ous. The policy clearly delineated the condition precedent to
obtaining an extension of policy coverage. If the insured be-
came aware of any occurrence arising within the policy period
which might have subsequently resulted in a lawsuit, the
insured was to give the insurer written notice of the potential
claim. Here, Mutual was not given the appropriate notice. The
"claims made" policy was valid.

Reversed and remanded.

REFERENCES FOR POINTS IN HEADNOTES
[1, 3] 44 Am Jur 2d, Insurance §§ 1876, 1884.
[2] 43 Am Jur 2d, insurance § 283.

1. INSURANCE — "CLAIMS MADE" POLICIES — "OCCURRENCES" POLI-
CIES.

A "claims made" type of insurance policy provides coverage for
claims brought during the certificate period and provides for an
extended discovery period; such policies include protection for
acts occurring prior to the effective date of the insurance
certificate if, as of the date of signing the insurance application,
the insured had no knowledge of the claim or potential claim
and no previous policy which would indemnify it against the
claim; an "occurrences" type of insurance policy provides for
coverage of any act or omission during the policy term regard-
less of when the claim is actually brought and such a policy
does not provide protection for claims arising out of acts or
omissions which occurred prior to the effective date of the term
of coverage.

2. INSURANCE — JUDICIAL CONSTRUCTION.

An insurance contract which is ambiguous should be liberally
construed in favor of the insured; however, the courts should
not create an ambiguity where none exists; if the policy lan-
guage is clear and unequivocal, its terms should be enforced
and the courts should not rewrite the contract.

3. INSURANCE — "CLAIMS MADE" POLICIES.

A "claims made" insurance policy does not contravene public
policy as working an unreasonable forfeiture; the insurer who
issues a "claims made" policy simply undertakes to insure
against a more limited risk than an insurer who issues an
"occurrences" policy and the insured receives the protection of
a "claims made" policy at a lower premium.

*Eddie D. Smith,* for plaintiff.

*Foster, Meadows & Ballard* (by *Paul D. Galea),*
for defendant.

Before: MACKENZIE, P.J., and BRONSON and T. R.
THOMAS,* JJ.

BRONSON, J. Third-party defendant-appellant
(hereinafter appellant) appeals by leave granted
from an order entered on June 9, 1980, in the

---

* Circuit judge, sitting on the Court of Appeals by assignment.

Wayne County Circuit Court, denying appellant's motion for summary judgment.

Plaintiff, Detroit Automobile Inter-Insurance Exchange (DAIIE), filed suit against appellees, alleging that certain policies of automobile insurance were improperly written, if not fraudulently issued, by them. DAIIE sought damages and recovery of certain upaid premiums allegedly retained by appellees. The acts which led to the commencement of this suit all occurred in 1975.

Appellees brought a third-party action against appellant, seeking indemnity or contribution for any amounts for which they might ultimately be found liable to DAIIE. This third-party complaint was premised on the existence of certain insurance policies issued by appellant which protected appellees for "agents' and brokers' errors and omissions" from October 23, 1974, through October 23, 1976.

Appellant denied any existing insurance coverage. It filed a motion for summary judgment, asserting that its "claims made" policies were clear and unambiguous in limiting liability to claims actually asserted before the expiration date of the policy term.

As is relevant, the insurance policies appellant issued for appellees' benefit provide:

"III. Certificate Period, Territory:
"This Certificate applied to Claims Brought During the Certificate Period arising from professional services, whenever or wherever tendered, or alleged to have been tendered, worldwide.
"(A) During the Certificate period, or
"(B) Prior to the effective date of this insurance provided the insured had no knowledge of any claim or suit, or any act, error or omission which might result in a claim or suit, as of date of signing the application for

this insurance and there is no previous policy or policies under which the Insured is entitled to indemnity for such claim or suit.

"EXTENDED DISCOVERY PERIOD:

"(C) *If, during the term of this Certificate, the Insured shall become aware of any occurrence which may subsequently result in a claim or suit and give written notice thereof to the Company, such claim or suit subsequently arising therefrom shall be covered under this Certificate.*

*"The term 'Certificate period' whenever used in this Certificate shall mean the period from the effective date of this Certificate to the expiration date or earlier termination date, if any, of this Certificate."* (Emphasis added.)

As appellant argues, we find this policy to be of the "claims made" variety, providing coverage for "claims brought during the certificate period" and providing for an extended discovery period. Coverage under the policies includes protection for acts occurring prior to the effective date of the insurance certificate if, as of the date of signing the insurance application, the insured had no knowledge of the claim or potential claim and no previous policy which would indemnify it against the claim. This type of policy is distinguishable from an "occurrences" policy which provides for coverage of any act or omission during the policy term regardless of when the claim is actually brought. An "occurrences" policy does not provide protection for claims arising out of acts or omissions which occurred prior to the effective date of the term of coverage. For a general discussion of the distinction between "claims made" and "occurrences" policies, see *Brander v Nabors,* 443 F Supp 764 (ND Miss, 1978), *aff'd* 579 F2d 888 (CA 5, 1978).

Appellees assert that an ambiguity exists in the

"EXTENDED DISCOVERY PERIOD" portion of the insurance policies so that the circuit court correctly denied appellant's motion for summary judgment. Specifically, appellees emphasize the "may" language in part C of the "EXTENDED DISCOVERY PERIOD" part of the policy set out above. Appellees argue that this language creates uncertainty as to whether the coverage is limited to claims asserted during the policy period or extends coverage to claims, the bases of which arose during the certificate period, but which were not asserted until some time later.

An insurance contract which is ambiguous must be liberally construed in favor of the insured. *Foremost Life Ins Co v Waters,* 88 Mich App 599, 604; 278 NW2d 688 (1979). However, the courts will not create an ambiguity where none exists. If the policy language is clear and unequivocal, its terms must be enforced, and the courts will not rewrite the contract. *Patek v Aetna Life Ins Co,* 362 Mich 292, 294-295; 106 NW2d 828 (1961), *Lincoln Mutual Casualty Co v American Arbitration Ass'n,* 49 Mich App 676, 680-681; 212 NW2d 765 (1973).

We conclude that the contract language of the policies in dispute is unambiguous. The policy clearly delineates the condition precedent to obtaining an extension of policy coverage. That is, if the insured becomes aware of any occurrence arising within the policy period which may subsequently result in a suit, and the insured gives the insurer written notice of this potential claim, then the subsequent claim will be covered. For all of the appellees' arguments concerning the ambiguous use of the word "may", the policy unequivocally requires the insured to take action during the policy term if it desires to obtain an extension

of coverage beyond the stated policy termination date. Appellees' construction of the policy language is obviously strained and unreasonable. For this reason alone, we decline to rule in appellees' favor on this issue. *Zurich Ins Co v Rombough,* 384 Mich 228, 233; 180 NW2d 775 (1970).

Appellees also argue that, if the policy is unambiguous and to be construed as appellant claims, the policy contravenes public policy as working an unreasonable forfeiture. This issue was recently addressed in *Stine v Continental Casualty Co,* 112 Mich App 174; 315 NW2d 887 (1982). In *Stine,* the majority noted *Lehr v Professional Underwriters,* 296 Mich 693; 296 NW 843 (1941), in which the Michigan Supreme Court held that a "claims made" insurance contract was enforceable and not against public policy. Nonetheless, the majority refused to be bound by *Lehr,* based on the following emphasized language in MCL 500.3008; MSA 24.13008:

> "In such liability insurance policies there shall be a provision that notice given by or on behalf of the insured to any authorized agent of the insurer within this state, with particulars sufficient to identify the insured shall be deemed to be notice to the insurer; and *also a provision that failure to give any notice required to be given by such policy within the time specified therein shall not invalidate any claim made by the insured if it shall be shown not to have been reasonably possible to give such notice within the prescribed time and that notice was given as soon as was reasonably possible."* (Emphasis added.)

We believe that Judge KAUFMAN's dissenting opinion in *Stine* is more persuasive than the majority opinion. Judge KAUFMAN stated in part:

> "I believe the majority misconstrues the impact of

MCL 500.3008; MSA 24.13008 upon this insurance policy. The statutory section precludes 'notice' provisions that invalidate claims that are otherwise within the effective coverage of a policy. The policy in question here was a 'discovery' policy which only covered claims discovered and actually brought against the insured during the policy period, regardless of when the acts or omissions causing liability took place. Presumably, such a policy is less expensive than an equivalent 'occurrence' policy, which would provide coverage if the act or omission took place during the policy period, regardless of the discovery date. To provide true protection, a discovery policy must be continued until the insured otherwise feels safe from the threat of liability or obtains delayed recording or extended discovery coverage.

"Here, coverage was denied not because the insured delayed notice to the insurer but because he allowed the policy to lapse prior to the discovery of the liability claim. Therefore, MCL 500.3008; MSA 24.13008 has no impact on this case." 112 Mich App 174, 180-181. (Footnote omitted.)

Although Judge KAUFMAN indicated that he was "not particularly enamored by this type of insurance policy", we have no objection to the same. The insurer who issues a "claims made" policy has simply undertaken to insure against a more limited risk than an insurer who issues an "occurrences" policy. Due to this fact, an insured receives the protection of a "claims made" policy at a lower premium. "Claims made" policies are typically issued to provide protection against allegations of malpractice in a wide variety of professional categories, including the medical, legal, and architectural professions. "Claims made" policies are rarely issued to the unsophisticated. There exists no good reason not to allow the insurance buying public to opt to purchase a lower priced "claims made" policy, nor is there any good reason

to force the insurer who issues a "claims made" policy to undertake the additional and uncontracted-for risks associated with "occurrences" polices.

Reversed and remanded. Appellant may tax costs.